UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SANTIAGO ORTUNO-PEREZ,

Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

Respondent.

CASE NO. 2:23-CV-344-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: August 18, 2023

Petitioner Santiago Ortuno-Perez, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington and is proceeding *pro se*, brings this 28 U.S.C. § 2241 habeas action contending his detention has been prolonged. Dkt. 1. Petitioner seeks immediate release from detention, or a bond hearing. Dkta. 1 at 2. Currently before the Court is the Government's habeas return and motion to dismiss. Dkt. 7.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends the Government's motion to dismiss be GRANTED and Petitioner's habeas Petition be DENIED.

# I. BACKGROUND

## A.    Immigration Proceedings

Petitioner is a native and citizen of Mexico who entered the United States without inspection in 1998. Dkt. 8 at ¶ 3. Prior to his current immigration matter, Petitioner was the subject of removal proceedings in 2009 ("2009 Matter"). *Id.*; Dkt. 9-2. Petitioner was released on bond during the 2009 Matter, and the proceedings were terminated in 2010 without prejudice after Petitioner was issued a non-immigrant visa authorizing his temporary presence in the United States until November 3, 2014. Dkt. 8 at ¶¶ 4, 5; Dkt. 9-3; Dkt. 9-4.

Petitioner was arrested in 2013 and convicted in 2014 on a charge of second degree murder. Dkt. 8 at ¶ 7; Dkt. 9-5. The conviction was later reversed on appeal, and the charges were dismissed on July 22, 2019 after the State elected not to re-try Petitioner. Dkt. 8 at ¶¶ 8, 9; Dkt. 9-5. However, Petitioner's non-immigrant visa status expired on November 3, 2014, while he was in criminal custody. Dkt. 8 at ¶ 7.

On August 2, 2019—after Petitioner was released from criminal custody—ICE took Petitioner into custody and commenced immigration proceedings. Dkt. 8 at ¶ 10. ICE served Petitioner with a Notice to Appear before the immigration court ("NTA"), charging Petitioner was removable under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States for longer than permitted. Dkt. 8 at ¶ 10; Dkt. 9-8. Petitioner's immigration matter has proceeded through several appeals and remands since that time, during which Petitioner has, through counsel, requested and obtained several extensions. Dkt. 8 at ¶¶ 13, 19, 30, 41.

The Immigration Judge ("IJ") held an evidentiary hearing on December 5, 2019 and issued a written decision ordering Petitioner to be removed to Mexico. *Id.* at ¶¶16, 17. The Board of Immigration Appeals ("BIA") upheld the IJ's removal order on May 28, 2020. *Id.* at ¶ 20. Petitioner appealed to the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"),

which issued a temporary stay of removal that remains in place. *Id*. at ¶ 21. On November 10, 2021, the Ninth Circuit remanded Petitioner's immigration proceeding to the BIA for further proceedings based upon an intervening change in BIA precedent. *Id*. at ¶ 30. The BIA remanded the matter to the IJ for further fact-finding and on December 20, 2022 the IJ issued a decision denying Petitioner's requests to terminate his removal proceedings. *Id*. at ¶ 39. Petitioner filed an appeal of that order, which remains pending with the BIA. *Id*. at ¶¶ 40, 44.

**B.    Bond Hearings and Other Custody Determinations**

Petitioner has been detained since ICE took him into custody in August 2019 and made its initial custody determination. Dkt. 9-7. During this time, Petitioner has had two bond hearings, at which he was represented by counsel and was permitted to submit evidence, and several additional custody determinations.

On October 29, 2019, the IJ conducted a bond hearing and issued a written memorandum decision denying Petitioner's request for custody redetermination. Dkt. 9-10. The IJ noted Petitioner "has an extensive criminal history," recounting the following:

- 2007 arrest for DUI with a conviction of reckless driving;
- 2008 conviction of possession of a dangerous weapon;
- 2008 arrest for DUI with conviction of negligent driving;
- 2008 conviction of minor in possession and consumption of liquor;
- 2008 arrest for DUI and deferred prosecution;
- 2010 conviction of minor in possession;
- 2010 conviction of ignition interlock violation;
- 2011 charge of protection order violation that was dismissed;
- 2012 conviction of DUI.

Dkt. 9-10 at 6. The IJ also discussed Petitioner's arrest and conviction of second degree murder, which was overturned on appeal after Petitioner served six years of his 280-month sentence. *Id*. The IJ noted Petitioner was a "known member of the Callejones Escondidos street gang," and the victim was known to be a member of a rival gang. *Id*. The IJ found, in light of Petitioner's

1  "overall criminal history and nature," that Petitioner had "not met his burden to demonstrate he is

2  not a danger to the community." *Id*. at 7.

3      Petitioner, through counsel, appealed the bond denial to the BIA. Dkt. 9-11 at 2. The BIA

4  dismissed the appeal in a written decision on October 10, 2020, noting Petitioner's "lengthy"

5  criminal history, as well as his dismissed conviction for the violent murder of a rival gang

6  member. *Id*. Although the conviction had been overturned, the BIA noted its precedent does not

7  limit an IJ to considering only convictions in custody redeterminations evaluating a non-citizen's

8  danger to the community. *Id*. at 3. The BIA concluded Petitioner had not met his burden of

9  establishing he was not a danger to the community. *Id*.

10      On January 8, 2021, Petitioner's counsel requested a second bond hearing and submitted

11  evidence. Dkt. 9-13. The IJ held a bond hearing on January 27, 2021. Dkt. 9-15. At that hearing,

12  the IJ placed the burden of proof on the Government, consistent with then-applicable Ninth

13  Circuit law.[1] Dkt. 9-16. The IJ found the Government had met its burden to establish Petitioner

14  was "a danger and a flight risk." Dkt. 9-16 at 2. Petitioner did not appeal the IJ's ruling. Dkt. 8 at

15  ¶ 5.[2]

16      In addition to his two bond hearings, Petitioner has also received several additional

17  custody reviews—on February 4, 2022, May 10, 2022 and July 29, 2022. Dkts. 9-17, 9-18, 9-19.

18  Each concluded Petitioner would remain detained due to his risk to public safety. *Id*.

19

20

---

21      [1] At that time, Ninth Circuit authority interpreted 8 U.S.C. § 1226(a) to require bond hearings every six

22  months at which the Government bore the burden to prove danger and flight risk by clear and convincing evidence.
   *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008); *Singh v. Holder*, 638 F.3d 1196 (9th Cir.

23  2011). The Supreme Court subsequently held there was no statutory right to periodic bond hearings at which the
   Government bore the burden to prove the necessity of continued detention. *Jennings v. Rodriguez*, ___ U.S. ___, 138
   S. Ct. 830, 846–48 (2018).

24      [2] Because no appeal was filed, the IJ did not issue a memorandum decision. Dkt. 8 at ¶ 5.

1    **C.  Federal Habeas Petition**

2          On  March 8, 2023, Petitioner initiated this matter. Dkt. 1. Petitioner seeks release from

3    custody or another bond hearing at which the burden of proof is placed upon the Government.

4    Dkt. 1 at 2; Dkt. 13. Respondent has filed a return memorandum and motion to dismiss, Dkt. 7.

5    Petitioner has filed a response. Dkt. 13. Respondent has not filed an optional reply.

6                                        **II. DISCUSSION**

7    **A.    Statutory Basis for Petitioner's Detention**

8          Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of

9    noncitizens who are present in the United States and have been placed in removal proceedings.[3]

10   *Avilez v. Garland,* 69 F.4th 525, 529–530 (9th Cir. 2023). Section 1226(a) grants DHS

11   discretionary authority to arrest and either to detain, or to release on bond, noncitizens "pending

12   removal proceedings," unless the noncitizen falls within one of the categories of criminals

13   described in § 1226(c), for whom detention is mandatory. 8 U.S.C. § 1226(a); *Jennings*, 138 S.

14   Ct. at 846–48. The parties here agree Petitioner is held under Section 1226(a) and therefore

15   subject to discretionary detention. Dkt. 1 at 3; Dkt. 7 at 1.

16         When a noncitizen is arrested and taken into immigration custody pursuant to Section

17   1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R.

18   § 236.1(c)(8). After the initial custody determination, the detainee may request a bond

19   redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). At the bond redetermination hearing, the

20   burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond.

21

22         [3] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of
23   2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions
     from the Department of Justice ("DOJ") to the Department of Homeland Security ("DHS"), while the DOJ's
     Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See*
24   *Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

1   *See In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). In making a bond decision under §

2   1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the

3   community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (citing *In re Patel*, 15 I.

4   & N. Dec. 666 (BIA 1976)). An IJ also may consider a number of discretionary factors,

5   including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's

6   length of residence in the United States; (3) the detainee's family ties in the United States, and

7   whether they may entitle the detainee to reside permanently in the United States in the future; (4)

8   the detainee's employment history; (5) the detainee's record of appearance in court; (6) the

9   detainee's criminal record, including the extensiveness of criminal activity, the recency of such

10  activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations;

11  (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the

12  detainee's manner of entry to the United States. *Id.*

13        If the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. § 236.1(d)(3). If the

14  BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court.

15  *Leonardo v. Crawford*, 646 F.3d 1157, 1159–61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932,

16  941 (9th Cir. 2004). Federal district courts have jurisdiction to review bond hearing

17  determinations for constitutional claims and legal error, but they cannot second guess an IJ's

18  discretionary judgment regarding the application of § 1226(a). *Martinez v. Clark*, 36 F.4th 1219,

19  1224 (9th Cir. 2022); 8 U.S.C. § 1226(e).

20        Once an IJ has made an initial bond redetermination, a detainee may seek a subsequent

21  bond redetermination, but must do so in writing and must show the detainee's circumstances

22  have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

23

24

1    Here, Petitioner argues he should be released because the IJ erred in finding he was a

2    danger to the community. Dkt. 13 at 1. But "an immigration court's determination that a

3    noncitizen is a danger to the community is a 'discretionary judgment' not subject to review."

4    *Martinez v. Clark*, 36 F.4th 1219, 1224 (9th Cir. 2022).

5    Instead, a noncitizen detained under § 1226(a) is entitled to release only if he can show

6    his detention is indefinite within the meaning of *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See*

7    *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062–63 (9th Cir. 2008). In *Prieto-Romero*, the Ninth

8    Circuit held the petitioner's detention was not indefinite because the government could repatriate

9    him to Mexico if his petition for review was unsuccessful. *Id.* Similarly, here, the Government

10    has presented evidence it will be able to repatriate Petitioner to Mexico if he is ultimately

11    ordered removed. Dkt. 8 at ¶ 43. Accordingly, Petitioner's removal is not indefinite, and he is not

12    entitled to release.

13    However, even if Petitioner's detention is statutorily authorized, the Court must

14    determine whether it comports with due process.

15    **B.    Due Process**

16    Petitioner contends his detention has become prolonged and he should be provided an

17    additional bond hearing at which the burden of proof is shifted to the Government. Dkt. 13 at 1.

18    Until recently, Ninth Circuit jurisprudence required noncitizens detained under § 1226(a)

19    to be provided automatic bond hearings every six months at which the government was required

20    to justify continued detention by clear and convincing evidence. *Rodriguez v. Robbins*, 804 F.3d

21    1060, 1084–85, 1087 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom. Jennings v. Rodriguez*,

22    138 S. Ct. 830 (2018). The Supreme Court reversed, explaining the Ninth Circuit had misapplied

23    the canon of constitutional avoidance and "[n]othing in § 1226(a)'s text . . . even remotely

24    supports the imposition of" periodic bond hearings where the government bears the burden.

1    *Jennings*, 138 S. Ct. at 847. The Supreme Court did not decide whether the Constitution requires

2    such periodic hearings and remanded to the Ninth Circuit for consideration of that question.[4]

3    **1. Applicable Test**

4         Where a petitioner has already had a bond hearing, courts in this District have applied the

5    test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine whether an additional

6    bond hearing is required. *See, e.g.*, *Madrigal v. Nielsen*, No. C18-843-JCC-JPD, 2018 WL

7    4732469, at *3 (W.D. Wash. Aug. 31, 2018), r*eport and recommendation adopted*, 2018 WL

8    4700552 (W.D. Wash. Oct. 1, 2018) (applying *Mathews* due process analysis to determine

9    whether due process required subsequent bond hearing).[5] *Mathews* requires courts to consider

10   three distinct factors: (1) the private interest at stake; (2) the government's interest, including the

11   function involved and the fiscal and administrative burdens that any additional procedural

12   requirements would entail; and (3) the risk of an erroneous deprivation of the private interest at

13   stake through the procedures used, and the probable value, if any, of additional procedural

14   safeguards. 424 U.S. at 335.

15        The Ninth Circuit recently applied the *Matthews* test to evaluate whether the Constitution

16   required providing a petitioner detained under § 1226(a) with an additional bond hearing.

17   *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). The court noted other courts have

18   regularly applied the *Mathews* test when evaluating due process challenges to immigration

19   detention—and observed that *Mathews* "remains a flexible test that can and must account for the

20   heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.

21   _____

22        [4] The Ninth Circuit subsequently remanded to the district court. *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018) ("*Rodriguez IV*").

23        [5] In contrast, in cases (unlike this case) where a petitioner has not had a prior bond hearing, courts in this District apply a multi-factor test. *See, e.g.*, *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106–07 (W.D. Wash.

24   2019).

1   4th at 1206–07. The court therefore assumed—without deciding—that *Mathews* applied, and

2   concluded the procedures the petitioner had already received under § 1226(a) satisfied due

3   process. *Id*.

4       The Court therefore considers the *Mathews* factors, as they are explained in *Rodriguez*

5   *Diaz*.

6       **2.  Applying the *Matthews* Test**

7       Applying the *Matthews* test, the Court concludes due process does not require an

8   additional bond hearing at this time.

9       **a.  Private Interest**

10      "As to the first factor, the private interest at issue here is 'fundamental': freedom from

11  imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v.*

12  *Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (addressing § 1226(a) detainees). Here, Petitioner

13  has been detained for a total of approximately 48 months—far longer than the 18-month

14  detention the court in *Rodriguez Diaz* assumed would qualify as "prolonged."

15      The court in *Rodriguez Diaz*, while acknowledging an 18-month detention weighed in

16  petitioner's favor, cautioned that prior case law using a 6-month benchmark arose in a context in

17  which no prior bond hearings had taken place. *Rodriguez Diaz*, 53 F.4th at 1207. The court

18  further cautioned that "we cannot simply count [petitioner's] months of detention and leave it at

19  that." *Id*. at 1208. Instead, the court must also consider the process petitioner received during the

20  time he was detained, the further process available to him, and "the fact that his detention was

21  prolonged due to his decision to challenge his removal order." *Id*.

22      The first factor weighs in petitioner's favor, but in light of the process available to

23  petitioner during his confinement and the contribution to the delays in adjudicating his

24

1    underlying removal proceedings caused by petitioner's litigation choices, this factor should not

2    be accorded overwhelming weight.

3        **b.  Government's Interest**

4        The Government argues it has a strong interest in detaining noncitizens with criminal

5    backgrounds, like Petitioner, to ensure they complete their removal proceedings. Dkt. 7 at 16,

6    citing *Demore v. Kim*, 538 U.S. 510, 520 (2003). The Government argues its interest is

7    particularly compelling in light of Petitioner's "escalating" criminal activity since his prior

8    release on an immigration bond during the 2009 Matter. Dkt. 7 at 16. The Government further

9    contends its interest in detaining petitioner increases as his case proceeds. Dkt. 7 at18 (citing

10   *Rodriguez Diaz*, 53 F.4th at 1208 (the Government's "interests are of the highest order that only

11   increase with the passage of time")).

12       The second factor weighs in the Government's favor. The Court agrees the Government

13   has a strong interest in detaining noncitizens whose criminal history demonstrates a danger to the

14   community, and in ensuring the successful implementation of removal orders. As in *Rodriguez

15   Diaz*, the Court finds these interests are significant. *Id.* at 1209.

16       **c.  Risk of Erroneous Deprivation/Value of Additional Safeguards**

17       *Rodriguez Diaz* held the statutory procedures provided under § 1226(a) were sufficient to

18   protect petitioner's liberty interests and mitigated the risk of erroneous deprivation. *Id*. at 1209–

19   1210. Petitioner here received even more than the procedures held sufficient in *Rodriguez Diaz*.

20       First, upon petitioner's initial detention, an ICE officer made an individualized custody

21   determination. Dkt. 9-7. Petitioner then requested and received an individualized bond hearing at

22   which he was represented by counsel and submitted evidence. Dkt. 9-10. As required by the

23   statutory scheme, Petitioner bore the burden of proof at this hearing to demonstrate he did not

24   pose a danger or a flight risk. *See* Dkt. 9-10. The IJ found Petitioner had not met his burden and

issued a written memorandum decision denying release on bond. *Id*. Petitioner was then afforded an appeal to the BIA, which also made an individualized determination of his safety and flight risk, and provided a written determination. Dkt. 9-11. This process matches the procedures the Ninth Circuit found constitutionally sufficient in *Rodriguez Diaz*. 53 F.4th at 1209–1210, 1213.

Second, Petitioner requested and received a second bond hearing, at which the burden of proof was shifted to the Government. Dkts. 9-15, 9-16. After the IJ found the Government had met its burden to establish Petitioner was a danger and a flight risk (Dkt. 9-16), Petitioner had the right to appeal the IJ's decision this decision to the BIA. 8 C.F.R. § 236.1(d)(3). However, he did not do so. Dkt. 8 at ¶ 26.

Finally, Petitioner retained the right to seek additional bond hearings upon a showing of changed circumstances. *See* 8 C.F.R. § 1003.19(e). In addition, he received additional reviews of his custody status. Dkts. 9-17, 9-18, 9-19.

Petitioner argues he should receive an additional bond hearing with the burden of proof shifted to the Government, citing *Juarez v. Wolf*, No. C20-1660-RJB-MLP, 2021 WL 2323436 (W.D. Wash. May 5, 2021), *report and recommendation adopted,* No. 20-1660-RJB-MLP, 2021 WL 2322823 (W.D. Wash. June 7, 2021). However, *Juarez* is distinct from this case because there, the petitioner was subject to mandatory detention and had never received a bond hearing. 2021 WL 2323436 at *2. Moreover, *Juarez* was decided before the Ninth Circuit held in *Rodriguez Diaz* that due process does not require an additional bond proceeding with the burden of proof on the Government in cases, like Petitioner's, where a detainee has already received a bond hearing in which he bore the burden of proof. *Rodriguez Diaz*, 53 F.4th at 1193. And finally, Petitioner has already received a second bond hearing at which the burden was placed upon the Government. Dkt. 9-16.

1    In short, Petitioner received all of the procedures the Ninth Circuit found were sufficient

2  to satisfy due process in *Rodriguez Diaz*, 53 F.4th at 1209–1210, 1213. Indeed, he received even

3  more—because he received an additional bond hearing where the Government bore the burden

4  of proof. This is an additional protection the Ninth Circuit has expressly held is not required by

5  due process where, as here, a petitioner has had access to bond determination procedures from

6  the onset of his detention. *Id*., 53 F.4th at 1210–11.

7    Petitioner received process matching—and exceeding—that which the court found

8  sufficient to meet due process requirements in *Rodriguez Diaz*. The third factor therefore weighs

9  in the Government's favor.

10   **d.  Weighing the Factors**

11   Two of the *Mathews* factors weigh in favor of the Government, and one factor weighs in

12  petitioner's favor. On balance, the *Mathews* test supports a finding that petitioner's detention

13  does not violate his rights under the Due Process clause. Petitioner's habeas petition should

14  therefore be denied.

15   **III. CONCLUSION**

16   The Court recommends the Government's motion to dismiss (Dkt. 7) be GRANTED,

17  Petitioner's habeas Petition (Dkt 1) be DENIED, and this action be DISMISSED with prejudice.

18   Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

19  fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P.

20  6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

21  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

22  objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

23  *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

24

imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on

August 18, 2023, as noted in the caption.

Dated this 1st day of August, 2023.

David W. Christel
Chief United States Magistrate Judge